Argued and submitted January 15, 1999, reversed and remanded April 19, 2000

JOHN LAWRENCE LOVELESS,
*Appellant,*

*v.*

Manfred MAASS,
Superintendent,
Oregon State Penitentiary,
*Respondent.*

(94C-12742; CA A95688)

999 P2d 537

Eric M. Cumfer argued the cause and filed the brief for appellant.

Janet A. Metcalf, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Deits, Chief Judge,* and Armstrong, Judge.

ARMSTRONG, J.

---

* Deits, C. J., vice Rossman, S. J.

## ARMSTRONG, J.

Petitioner appeals from a judgment dismissing his petition for post-conviction relief from convictions for three counts of sexual abuse in the first degree and one count of sodomy in the first degree, each involving alleged misconduct with his stepson (the child). In the petition he asserted, among other things, that his counsel at the criminal trial conducted a constitutionally inadequate pre-trial investigation, with the result that he failed to discover evidence that had a tendency to affect the result of the trial. We agree with petitioner that his trial counsel was constitutionally inadequate in at least one respect and that that inadequacy prejudiced petitioner. We therefore reverse the denial of post-conviction relief.

Petitioner and Kristen Sullivan (Sullivan) were married in 1981 and divorced in October 1985. The child was born on June 20, 1985. Although petitioner is not the child's biological father, he considers the child to be his son. He had custody of the child for much of the time between the child's birth and the events at issue in the original trial. After a short reconciliation in either summer 1987 or summer 1988, petitioner and Sullivan were engaged in a continuing legal dispute over custody of the child and of an older son. The first allegation that the child had been sexually abused came in March 1989 and resulted in a thorough police investigation. The police considered both Sullivan's mother and petitioner as possible perpetrators. Because there was no physical evidence of abuse and because of the child's age, the eventual decision was against prosecution. Petitioner's attorney in the custody dispute obtained a copy of the report of Detective King, the investigating detective, presumably for use in the custody case.

There was another complaint in October 1989 that also led to no action. In May 1990, Sullivan initiated a third complaint because of statements that the child had made to a babysitter and to her. That complaint ultimately led to an indictment that charged petitioner with having committed sexual abuse between June 20, 1988, and May 6, 1990, and with having committed sodomy between May 1, 1988, and

May 6, 1990. At the trial, the only significant evidence against petitioner came from the child or from witnesses who described what the child had said to them. In his testimony, petitioner denied that any of the alleged events had occurred. Petitioner's criminal counsel, who was not the same person as petitioner's counsel in the custody dispute, did not learn of Detective King's report before the trial and did not use it in preparing the defense. After the verdict, criminal counsel became aware of that report and of some other evidence and used it as the basis for a motion for a new trial. The trial court denied the motion, in part on the ground that the evidence was not newly discovered under the appropriate legal standard. *See State v. Williams*, 2 Or App 367, 371, 468 P2d 909 (1970).

At the post-conviction hearing, petitioner presented evidence that in his view showed that his criminal counsel's investigation of the case was inadequate and that an adequate investigation would have produced evidence that would have had a tendency to affect the result of the case. We discuss only evidence that showed that petitioner's counsel in the criminal case did not attempt to determine who represented petitioner in the custody dispute with Sullivan or to get in touch with that lawyer, with the result that the criminal lawyer did not know about King's report before trial. Petitioner testified that he told his criminal lawyer the name of his custody lawyer, that he told his custody lawyer that his criminal lawyer might call him, and that the custody lawyer had indicated that he would cooperate with the criminal lawyer. Petitioner's criminal lawyer denied that petitioner gave him the name of the custody lawyer but otherwise does not dispute petitioner's evidence.

Petitioner's criminal lawyer did talk with the lawyer who had briefly represented petitioner during the March 1989 investigation, but that lawyer had nothing of significance in his file. He made no other attempt to determine who represented petitioner in the custody dispute. If petitioner's criminal lawyer had talked with petitioner's custody lawyer, he would have had an opportunity to review the custody lawyer's file, in which he would have found a copy of King's report. Among other things, that report contained a summary of a statement from Seanna Kansier, who at the time

was both petitioner's sister-in-law and a close friend of Sullivan. King reported that Kansier had stated that she believed that Sullivan had planted the idea with the child that petitioner was abusing him.

In an affidavit that petitioner submitted as an exhibit in the post-conviction proceeding, Kansier expanded on the statements in King's report. She explained that she knew Sullivan as a close friend and companion during Sullivan's custody battle with petitioner in 1989 and 1990. On a daily basis, she saw Sullivan prepare the child on how to act on the witness stand; Sullivan's efforts involved daily coaching:

> "Due to the intense animosity towards John Loveless, Kristen Sullivan would twist [the child's] favorable statements about his father's conduct by putting a negative, sexually oriented spin on the formerly favorable statements. The purpose of this behavior was to change [the child's] outlook and perception of John Loveless and to get [the child] in the habit of talking bad about his father to others so [the child] would seem credible and natural when he testified. Kristen Sullivan gained [the child's] participation by rewarding him with attention and love when he talked about his father the way Kristen Sullivan did. Conversely, Kristen Sullivan deprived [the child] of love and attention until he 'performed' the way she desired, in a negative manner towards John Loveless."

(Use of uppercase deleted.) We conclude that, in light of the evidence that Kansier would have given at trial, petitioner's criminal lawyer's failure to find her and offer her as a witness is in itself sufficient to entitle petitioner to post-conviction relief. We therefore do not consider the other issues that petitioner raises.

In reviewing a claim of inadequate assistance of counsel, we are bound by the post-conviction court's factual findings that are supported by evidence in the record, but we make our own determination of the constitutional issues. *See Carias v. State of Oregon*, 148 Or App 540, 542, 941 P2d 571 (1997). Those constitutional issues include whether counsel was ineffective or inadequate and whether the petitioner was prejudiced as a result. *See Ashley v. Hoyt*, 139 Or App 385, 391, 395-96, 912 P2d 393 (1996). Although there is no "single,

succinct, clearly defined standard for determining adequacy of counsel," the exercise of reasonable professional skill and judgment generally requires "an investigation that is legally and factually appropriate to the nature and complexity of the case so that the lawyer is equipped to advise and represent the client in an informed manner." *Stevens v. State of Oregon*, 322 Or 101, 108, 902 P2d 1137 (1995).

In *Stephens*, a sexual abuse case that turned on the credibility of the complaining witness and the defendant, the attorney's failure to interview several witnesses whose testimony might have a bearing on the complaining witness' credibility was constitutionally inadequate. The decision not to interview those witnesses was not based on a reasonable evaluation of the likely costs and benefits of pursuing the investigation but simply on a decision to rely on the police report to identify the material witnesses. Because those witnesses, if they had been interviewed, would have impeached the testimony of the complaining witness and her parents, the Supreme Court held that the constitutional failure prejudiced the petitioner and therefore ordered post-conviction relief. *Id.* at 109-10.

In *Carias*, the petitioner was convicted of delivery of a controlled substance by selling it to an undercover officer. At the time of the purchase, the petitioner was in the company of a juvenile. The juvenile made the actual delivery, but the state argued that the petitioner had negotiated the deal. The petitioner's trial attorney did not attempt to find or make contact with the juvenile because of his belief that, whatever story she told him, it would not ultimately help the petitioner at trial. We held that the attorney's reliance on his assumptions to excuse a total failure to investigate was a failure to exercise reasonable professional skill and judgment. We nevertheless affirmed the denial of post-conviction relief because the petitioner did not show what the juvenile's testimony would have been and thus did not show that it would have had a tendency to affect the result of the prosecution.

■ In this case, the first question is what legal and factual investigation was appropriate to the nature and complexity of petitioner's case. It should have been clear to petitioner's attorney that the case would probably turn on the

credibility of petitioner and the child. The attorney must also have known that there was an ongoing custody dispute concerning the child and his brother. A competent attorney would normally investigate the relationship between the custody dispute and the sexual abuse charge, including the possibility that the other parent had instigated the charge for use in the custody case. Nevertheless, petitioner's criminal attorney, despite knowing of the custody dispute, did not get in touch with petitioner's custody attorney. Even accepting the trial court's implicit finding that petitioner did not give his criminal attorney the name of his custody attorney, it would not have been difficult for the criminal attorney to have learned who the custody attorney was. He could have asked petitioner for the name, or he could have checked the court records in the custody case.

If petitioner's criminal attorney had contacted the custody attorney, he would have discovered King's report in that attorney's file. In that report, he would have found Kansier's statement that she had observed "Sullivan prepare [the child] on how to act on the witness stand" and that she felt "that [Sullivan had] planted the idea" with the child that petitioner had abused him. A competent attorney would have followed up that statement by interviewing Kansier, which would have led him to the information that is in Kansier's affidavit in the post-conviction case. Had Kansier testified at trial, her testimony that Sullivan had been telling the child what to say on the stand would have supported the testimony of the child's brother, who testified that the child had told him that "his mom told him to say bad things about my dad that weren't true."

For these reasons, we hold that the attorney's investigation did not satisfy the constitutional standard. The state does not argue that the attorney made a conscious tactical decision not to investigate the custody issue, and the evidence would not support such an argument. Even if it did, we would have difficulty concluding that not following so obvious and potentially fruitful a lead was a legitimate tactical choice rather than a failure to exercise professional judgment. The state does argue that King's report involved the 1989 investigation that did not result in any charges, not the 1990 investigation that led to the indictment, and that it was

therefore irrelevant to the issues at the trial. However, the indictment charged petitioner with sexual abuse and sodomy during a period that began in 1988; thus, whatever might be the situation otherwise, information about the 1989 investigation would be relevant to an investigation of the charges against petitioner.

The next question is whether the attorney's inadequate investigation prejudiced petitioner. Kansier's testimony that Sullivan coached the child in how to testify and that she gave or withheld affection depending on the child's attitude toward petitioner could have significantly impeached the child's testimony by suggesting that Sullivan manipulated the child in order to create it. In a case that turned on whom the jury believed, that evidence would definitely have a tendency to affect the outcome. Looking at the testimony by itself, it appears that the failure to discover it prejudiced petitioner.

The state argues, however, that the testimony had no tendency to have an effect on the case. It first argues that King's report was irrelevant because it related to irrelevant dates; we reject that argument for the reason that we previously gave. It next argues that Kansier's affidavit is also irrelevant because it relates to irrelevant dates. The state notes that Kansier testified that she was Sullivan's close companion during 1989 and 1990 and argues from that statement that her evidence about Sullivan manipulating the child may refer to the original investigation in 1989 rather than the one in 1990 that led to these charges. Again, the fact that the indictment charged petitioner with committing the crimes beginning in 1988 deprives that argument of whatever force it might otherwise have.

■ The state argues, finally, that the testimony in Kansier's affidavit was almost entirely inadmissible because it was a comment on the credibility of a witness. It points out that the Supreme Court in *State v. Keller*, 315 Or 273, 844 P2d 195 (1993), and this court in *State v. Wilson*, 121 Or App 460, 855 P2d 657, *rev den* 318 Or 61 (1993), have held that opinion evidence about whether a witness has been coached

or led to testify about an incident of sexual abuse or has fantasized such an incident is inadmissible, because that evidence would address another witness' credibility. It is not clear that Kansier's statements fit that rule rather than simply being a shorthand way of communicating what she had observed. *See* Commentary to OEC 701, *reprinted in* Laird C. Kirkpatrick, *Oregon Evidence*, 401-02 (3d ed 1996); *Kohlhagen v. Cardwell*, 93 Or 610, 613-14, 184 P 261 (1919); 1 *McCormick on Evidence* § 11, 43-45 (4th ed 1992). Assuming, however, that part of Kansier's statement consisted of inadmissible opinions, the trial court could easily have excluded them without eliminating her testimony about what she had actually observed with respect to Sullivan and the child. The jury could have used Kansier's testimony, which showed Sullivan allegedly creating the child's evidence, together with its direct observations of the child's testimony, to make its own evaluation of the child's credibility. That evidence is no different from the evidence that the attorney failed to find in *Stevens*, which tended to show that the complaining witness had acted normally after the alleged incident of abuse. That evidence impeached her credibility in the same way that evidence of manipulation would have impeached the child's credibility in this case. Although *Keller* may prohibit a witness from speculating about what may have happened or the reasons for a witness' actions, it does not make it improper to impeach a witness by direct evidence of what happened.

Because petitioner's trial attorney failed to conduct an adequate investigation, and because as a result of that failure he failed to discover and present evidence that had a tendency to affect the result of the case, petitioner is entitled to post-conviction relief.

Reversed and remanded.