Argued and submitted October 2, 2007, decision of Court of Appeals and
judgment of circuit court affirmed March 27, 2008

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## GEORGE PETE EVANS,
*Petitioner on Review.*

(CC 04030588; CA A125947; SC S054710)

182 P3d 175

Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services, Salem, argued the cause for petitioner on review. With him on the briefs was Louis R. Miles, Deputy Public Defender.

Susan G. Howe, Senior Assistant Attorney General, Salem, argued the cause for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

LINDER, J.

## LINDER, J.

During the *voir dire* of the prospective jurors in this criminal case, the trial court asked whether any of them knew defendant or the counsel for the parties. One prospective juror responded that she knew defendant. When the trial court asked in what context, she explained that she and defendant used to be friends and that she had an "outstanding stalking order" against him. Although the trial court excused that prospective juror for cause, the trial court declined to grant a mistrial. The issue for our resolution is whether that prospective juror's comment, which was made in the presence of the other prospective jurors, so tainted the remaining prospective jurors as to deprive defendant of his right to an impartial jury. We conclude, as did the Court of Appeals, that the prospective juror's comment was not so inherently prejudicial that the trial court had no choice but to grant a mistrial. Accordingly, we affirm.

For purposes of the issue presented, the historical facts can be briefly described. Defendant and the victim had been friends for many years. After residing together for a time in the victim's residence, the two had a disagreement, and defendant moved out. When defendant returned to the victim's residence to recover some property, the victim and defendant got into a physical altercation, and defendant left. The victim then rummaged through some of defendant's belongings, found two one-gallon jugs of iodine, and poured their contents on the ground. Shortly afterwards, defendant heard about the victim's disposal of the iodine and became enraged. He left numerous angry, profane, and threatening voice messages on the victim's cell phone. Not long after defendant left those voice messages, four of defendant's friends arrived at the victim's house, beat the victim severely, and stole his car. Based on defendant's role in encouraging and aiding the crimes against the victim, defendant was charged with first-degree robbery, first-degree burglary, unauthorized use of a vehicle, and second-degree assault.

On the day of trial, the trial court assembled a panel of prospective jurors and began *voir dire* by asking several questions of them as a group. The trial court identified the prosecutor, the defense counsel, and defendant. Among the

trial court's first questions was whether any of the prospective jurors knew defendant or the parties' counsel. Seven answered affirmatively by raising their hands.[1] The trial court then asked each of those prospective jurors who they knew and in what context. The exchange below occurred with the third juror so questioned:

"PROSPECTIVE JUROR [Name]:   I know [defendant].

"THE COURT:   Okay. And in what context?

"PROSPECTIVE JUROR [Name]:   Used to be a friend. I have an outstanding stalking order against him.

"THE COURT:   So that would probably not be best if you served on this?

"PROSPECTIVE JUROR [Name]:   Probably not.

"THE COURT:   Okay. I'll allow you to be excused."

After the trial court excused that prospective juror, the court briefly questioned the remaining four who had raised their hands. Defense counsel then moved for a mistrial. The trial court deferred a ruling on the motion until after *voir dire* was complete. In the later arguments on defendant's motion, defendant urged that the entire panel of prospective jurors had been "poisoned" by the reference to the stalking order against defendant. The prosecutor, in response, disputed that the comment was sufficiently prejudicial to warrant a mistrial. The prosecutor also argued that any residual prejudice from the remark could be addressed through a curative instruction. The trial court denied the motion, declaring that the comment was not "egregious enough to rise to the level of a mistrial." The trial court offered, however, to give a curative instruction to the jury. Defense counsel expressed concern that such an instruction would refocus the jurors' attention on the comment and asked if he could "withhold" a request for such an instruction until later. The trial court agreed that defense counsel could

---

[1] There appears to have been a total of 24 prospective jurors on the panel in this case. Of the seven who indicated that they knew either defendant or counsel, two were excused for cause (the prospective juror who knew defendant, and one who worked in law enforcement and who knew both the prosecutor and the defense counsel). The other five all were friends or acquaintances of defense counsel. None of those prospective jurors was excused for cause.

request the instruction later in the trial. Defense counsel, however, never did so.

On appeal, defendant challenged the denial of the motion for mistrial as an abuse of discretion, arguing that the comment by the excused prospective juror so tainted the remaining prospective jurors as to deprive defendant of an impartial jury trial in contravention of Article I, section 11, of the Oregon Constitution. The Court of Appeals rejected his argument, *State v. Evans*, 211 Or App 162, 154 P3d 166 (2007), and this court thereafter allowed defendant's petition for review. On review, the parties largely renew the arguments that they made to the trial court and to the Court of Appeals.

Under Article I, section 11, of the Oregon Constitution, a defendant in a criminal prosecution has the right to a "public trial by an impartial jury." *See also* ORS 136.001(1) (codifying the same guarantee). The guarantee of an impartial jury reflects "several related concerns, including that jurors be honest, that they not be interested in the outcome of the case, and that they be free from influence by the parties[.]" *State v. Amini*, 331 Or 384, 391, 15 P3d 541 (2000). An impartial jury, therefore, is one that is not biased "in favor of or against either party" and that will base its decision on the "evidence produced at trial and legal standards provided by the trial court." *Id.* The fact that a juror has preconceived ideas about a matter relevant to the case does not *per se* mean that a juror cannot be fair and impartial. *State v. Barone*, 328 Or 68, 74, 969 P2d 1013 (1998). The touchstone of impartiality is, instead, the juror's ability to decide the matter with an open mind—that is, the juror's ability to set aside any pre-existing opinions or impressions and to decide the case impartially.[2]

---

[2] ORCP 57 D(1), as supplemented by ORS 136.220, governs the various grounds on which a prospective juror may be challenged for cause in criminal cases. *See* ORS 136.210(1) (so providing). The statutory standards for excluding prospective jurors based on bias set out in that rule reflect the same values and concerns as the constitutional principle. The rule defines actual bias as "the existence of a state of mind on the part of a juror that satisfies the court, in the exercise of sound discretion, that the juror cannot try the issue impartially and without prejudice to the substantial rights of the party challenging the juror." ORCP 57 D(1)(g). The rule also expressly describes what does *not* disqualify a juror for cause. In particular, the rule declares that, when a juror forms an opinion on the merits of the cause

■   As we have described, defendant's motion for a mistrial was based on one prospective juror's statement during *voir dire* that she had a stalking order against defendant. The issue is not whether that prospective juror should have been excused for cause; the trial court concluded that she should be and removed her from the panel. Neither is the issue whether the reference to the stalking order was relevant and proper for a trial jury to consider in deciding defendant's guilt or innocence of the charges; no such evidence was used at trial, and the state agrees that it could not have been. The issue, rather, is whether the comment must be deemed as a matter of law to have so prejudiced the entire panel of prospective jurors that those who were later selected for the jury could not resolve the case impartially—that is, based on the evidence and the applicable law.

Defendant does not claim *actual* bias on the part of the prospective jurors. Defense counsel examined the prospective jurors during the *voir dire* and, at the conclusion of his questioning, passed the panel for cause—in other words, defendant did not challenge any of the remaining prospective jurors for actual bias or inability to try the case impartially. Defendant therefore is left to a claim of *assumed* bias. His argument is that the excused prospective juror's reference to the stalking order was so inherently prejudicial that the remaining jurors, because they heard it, must be assumed to have been unable to disregard what they heard and to try the case based only on the evidence that would later be adduced at trial. In essence, defendant's argument is—and must be— that the trial court, as a matter of law, had no choice but to grant the motion for mistrial. *See State v. Larson*, 325 Or 15, 22-25, 933 P2d 958 (1997) (motion for mistrial is addressed to sound discretion of trial court; appellate court will not disturb the ruling unless only one choice was legally permissible).

We have only once before considered whether a remark made during *voir dire* by a prospective juror so tainted the entire panel as to deprive a defendant of the right to an impartial jury. In *State v. Simonsen*, 329 Or 288, 986

from something that the juror may have heard or read, "such opinion shall not of itself be sufficient to sustain the challenge[.]" *Id.* Instead, the juror is subject to challenge for cause only if the trial court is satisfied, "from all the circumstances that the juror cannot disregard such opinion and try the issue impartially." *Id.*

P2d 566 (1999), the defendant successfully appealed his death sentence, and the case was remanded for a new penalty-phase trial. During *voir dire* on remand, one of the prospective jurors stated that he had heard on the news that the defendant's earlier death sentence had been overturned. The trial court denied the defendant's motion to excuse the entire jury panel for cause. The trial court specifically instructed the remaining jurors, however, not to consider statements made by excused prospective jurors during *voir dire*. *Id.* at 292.

On direct appeal to this court, the defendant argued that the prospective jurors' exposure to the one juror's reference to the news account biased them and rendered them unable to try the case impartially. *Id.* at 292-93. Emphasizing the trial court's superior vantage point in assessing the effect of that reference, the court concluded that the trial court's denial of the motion was not an abuse of discretion. *Id.* at 294. For guidance, the court looked to two prior cases involving motions for mistrial based on irrelevant and prejudicial statements made by witnesses *during trial*. *Id.* at 293-94.[3] As in those prior cases, where the motions were properly denied, the statement at issue in *Simonsen* was "brief and inadvertent" and the prosecutor "did not attempt to capitalize on [it]." *Id.* This court therefore held that the "trial court, having heard the statement in context," did not abuse its discretion in refusing to dismiss the jury panel. *Id.*[4]

This case and *Simonsen* are not significantly different. As was true of the comment made in *Simonsen*, the prospective juror's reference in this case to an outstanding stalking order was isolated and brief, was not emphasized or dwelled on, and was not used by the state in any way. Also, as in *Simonsen*, the trial court heard the statement in context and was in the best position to gauge its effect on the other

---

[3] The cases were *State v. Pratt,* 316 Or 561, 583, 853 P2d 827 (1993) (mistrial not required based on witness's isolated reference to defendant's presence on death row) and *State v. Farrar,* 309 Or 132, 164, 786 P2d 161 (1990) (mistrial not required for improper statement made in passing and where state did not capitalize on it).

[4] *Simonsen,* like this case, involved a claim of inherent prejudice and presumptive bias, rather than actual bias. There, however, the claim was raised through the procedural device of a motion to dismiss the jury panel. Here, in contrast, defendant raised the claim through a motion for mistrial.

prospective jurors in the pool. We could, on that basis alone, affirm the trial court's ruling in this case.

We believe, however, that one additional fact that *Simonsen* and this case have in common is significant to the analysis. Specifically, both cases involved mistrial motions based on a prospective juror's comments *during voir dire*, rather than a witness's comments *during trial*. As the discussion in *Simonsen* suggests, the two situations are analogous and a comparison between them is potentially helpful. But in assessing the prejudicial effect of information to which a trial jury has been exposed, *voir dire* is a distinctive procedural context in at least two respects.

First, *voir dire* is not an evidentiary phase of the trial. Instead, by design, it is a pretrial "quest * * * for jurors who will conscientiously apply the law and find the facts." *State v. Nefstad*, 309 Or 523, 534 n 6, 789 P2d 1326 (1990) (quoting *Wainwright v. Witt*, 469 US 412, 423, 105 S Ct 844, 83 L Ed 2d 841 (1985)). Inquiring into the prospective jurors' potential interest or bias in a case is a legitimate way of selecting fair-minded individuals to serve on the jury. *See id.* at 526 (prosecutors appropriately used *voir dire* to determine whether prospective jurors were biased in their views on death penalty). *Voir dire* thus entails an inherent risk that the panel of prospective jurors will be exposed to information revealed by individual prospective jurors who are excused from the panel for cause.

Second, and relatedly, *voir dire* permits direct inquiry into a prospective juror's impressions, opinions, and biases. Thus, when the *voir dire* examination exposes an entire pool of prospective jurors to prejudicial information, the proceeding permits an actual inquiry into whether those jurors are nevertheless willing and able to base their verdict on the evidence adduced at trial and on the law as the trial court explains it. The same is not true of comments made by a witness during trial, the prejudicial effect of which must be determined indirectly based on their potential prejudicial effect. *See generally State v. Pratt*, 316 Or 561, 583, 853 P2d 827 (1993) (deferring to trial court's assessment of prejudicial effect of witness's improper comment based on trial court's oversight of entire trial and presence when comment was

made); *State v. Farrar*, 309 Or 132, 164, 786 P2d 161 (1990) (same).

Ordinarily, the fact that *voir dire* is a quest for conscientious jurors, not an evidentiary phase of the trial, is a point not likely to be lost on the pool of prospective jurors. The record in this case confirms that observation. The trial court began the *voir dire* examination by advising the panel:

> "Each juror must be able to judge this case fairly and objectively. So we need to know if any of you know anything about this case or about any people involved, or if anyone has formed any opinion about this case or the subject matter of the case."

The trial court conducted much of the *voir dire* examination itself and probed the prospective jurors' abilities to be impartial in the trial.[5] Counsel for both parties also examined the prospective jurors and were free to ask any questions that they deemed necessary to satisfy themselves of each prospective juror's impartiality. Defense counsel, for example, asked the prospective jurors for their assurance that they would decide the case based on "the facts from the witness stand" and the law as given to them by the judge. As he concluded his examination, defense counsel reminded the prospective jurors that each of them had promised to go into the trial with "a blank mind," after which he passed the panel for cause. Defense counsel did not ask the prospective jurors during *voir dire* whether hearing the reference to the stalking order against defendant affected their ability to deliberate impartially. Likewise, defense counsel chose not to have the panel cautioned to disregard the comment. To be sure, counsel probably followed that course so that the prospective jurors would not be reminded of the comment. But, having failed to

---

[5] For example, in addition to asking the jurors whether they knew defendant or counsel for the parties, the trial court also asked them whether they had previously served as jurors; whether they had been witnesses in court proceedings; whether they had been victims of a crime; and whether there was anything in their personal or family history that, given the nature of the charges, might cause them to question their own impartiality. Whenever a prospective juror answered affirmatively—which happened frequently—the trial court asked additional questions of the individual juror to probe his or her ability to decide the case impartially. The only two jurors who were excused for cause both candidly volunteered the basis on which they were potentially biased, and both readily agreed that it would be best for them not to serve as a juror in this matter.

make that inquiry directly, defense counsel left the evaluation of the prejudicial effect of the comment to the trial court.

■      Years ago, this court observed that a trial jury "is not such a delicate instrument of justice that it can be expected to function only when wholly free" of information—favorable and unfavorable—to which the jurors may be exposed outside the evidentiary confines of the trial itself. *State v. Gardner*, 230 Or 569, 578, 371 P2d 558 (1962). That observation is particularly apt in assessing the prejudicial effect of the information to which prospective jurors may be exposed during *voir dire*. Just as we do not assume that potential jurors generally will be unable to set aside any preconceived opinions or impressions about a case, we are unwilling to assume that otherwise impartial prospective jurors cannot disregard the kind of comment that was made in this case.

In assessing the inherent prejudice of the excused prospective juror's comment on the remaining members of the panel, we therefore consider, as we did in *Simonsen*, the fact that the comment was singular and brief, was not used by the prosecution to any advantage, and was assessed "in context" by the trial court. Equally important, the comment was a candid response to a vital question, one asked in a proceeding that is designed to uncover potential juror bias. Assessing the effect of the comment on the pool of otherwise impartial prospective jurors was particularly within the province of the trial court, who examined the prospective jurors personally and who observed them throughout the *voir dire*. See *Nefstad*, 309 Or at 528, 528 n 3 (reaffirming settled principle that appellate courts give great weight to a trial court's assessment of juror impartiality because of its superior ability to observe demeanor, manner, and bearing while under examination). On this record, we cannot say that, as a matter of law, the comment was so inherently prejudicial as to deprive defendant of his right to an impartial jury under Article I, section 11. The trial court therefore permissibly exercised its discretion to deny the motion for mistrial.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.