Submitted June 22, 2009, affirmed March 3, petition for review denied August 18, 2010 (348 Or 669)

JEREMY ADAM MONAHAN,
*Petitioner-Appellant,*

*v.*

Brian BELLEQUE,
Superintendent,
Oregon State Penitentiary,
*Defendant-Respondent.*

Marion County Circuit Court
06C17360; A135830

227 P3d 777

Patrick M. Ebbett and Chilton, Ebbett & Galli, LLC, filed the brief for appellant.

John R. Kroger, Attorney General, Erika L. Hadlock, Acting Solicitor General, and Inge D. Wells, Senior Assistant Attorney General, filed the brief for respondent.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Deits, Senior Judge.

WOLLHEIM, P. J.

### WOLLHEIM, P. J.

In this post-conviction relief case, petitioner alleges that his counsel was inadequate for failing to move for a mistrial after the trial court refused to remove a specific juror. That juror had prior personal knowledge of a man, Harding, who was with petitioner during the shooting for which petitioner was convicted. Although Harding's name was not on the witness lists read to the jury during *voir dire* and Harding did not testify at trial, reference to his name was made at trial. Thereafter, the juror notified the court that she knew Harding. Subsequently, trial counsel moved to replace that juror with an alternate, and the trial court denied that motion. Trial counsel did not move for a mistrial, and appellate counsel did not assign error on direct appeal to the denial of the motion to replace the juror.

Petitioner alleged in his petition for post-conviction relief that, among other claims, he was denied constitutionally adequate counsel for those omissions by his trial and appellate counsel. The post-conviction court denied his petition, and petitioner appeals from that judgment. We review the post-conviction court's judgment for errors of law and for evidence to support its findings, *Stroup v. Hill*, 196 Or App 565, 568, 103 P3d 1157 (2004), *rev den*, 338 Or 432 (2005), and affirm.

The following facts are undisputed. Petitioner shot another man, Williams, with a firearm. That shooting followed an earlier dispute in which petitioner and Williams agreed to meet to fight each other. At that time, petitioner was visiting Harding at his home. Harding gave petitioner a gun and accompanied petitioner on a walk. While petitioner and Harding were walking, they encountered Williams, who was accompanied by two other men. During that encounter, petitioner shot Williams. According to petitioner, Harding stood off to the side and was not really involved in the shooting.

Petitioner was indicted for attempted murder with a firearm, ORS 161.405, ORS 161.610 and ORS 163.115; first-degree assault with a firearm, ORS 161.610 and ORS 163.185; unlawful use of a weapon, ORS 166.220; and felon in possession of a weapon, ORS 166.270. At the trial, petitioner

admitted that he shot Williams, but asserted that he did so in self-defense, to try "to stop [Williams] from coming at me."

Harding was not on the witness list and did not testify at trial. However, during the second day of trial, one of the jurors approached the court clerk. The clerk reported to the court and the attorneys:

> "She came to me and said that when you gave the list of witnesses she didn't hear Jeremy Harding listed and she knows him, and she stated, I know him only too well and it's coloring my perception of things."

Petitioner's trial counsel suggested that the court give some kind of curative instruction to the juror or, in the alternative, allow an inquiry to gain more specific information. The state countered that there was no basis for the court to conduct any further inquiry of that juror. The court instructed the clerk to inform the juror that "Harding was not on the witness list and will not be a witness." The court did not specifically address trial counsel's request for a further inquiry of the juror.

Trial counsel subsequently requested that the court remove the juror and seat the alternate in order to ensure the fairness of the trial and to protect petitioner's due process rights. The trial court replied:

> "The only communication we had from [the juror] was to the extent that she was apparently apprehensive or worried that this person was going to be a witness. * * * [B]ecause she thought that person was going to be a witness, apparently that's the reason she communicated, but there is no misconduct because this person, Mr. Harding, is not a witness and nobody inquired of the jury as to whether or not they would be affected if that name was mentioned. * * * [W]e find ourselves in an unusual position: now that she knows he is not a witness, I don't know what, if anything, that would have in terms of an impact on her."

The trial court then clarified its understanding that the juror had concerns about impartiality only "because she thought [Harding] was going to be a witness." The trial court then stated, "I don't know if she has any additional concerns once she was told that that person is not a witness."

Trial counsel again requested, at the close of the evidence, that the juror be replaced with an alternate juror because the juror's statement to the clerk "supports an inference that she is actually biased." The court denied "the motion to replace that juror because I don't find at this point that there has been any misconduct * * * based on the evidence before the Court." However, the court indicated that it would, and later did, provide the standard instruction to the jury not to "allow bias, sympathy or prejudice any place in [its] deliberations" and not to "decide this case on guesswork, conjecture or speculation." Ultimately, the jury acquitted petitioner on the attempted murder count and convicted petitioner on the remaining counts.

Petitioner appealed his convictions but did not assign error to the trial court's denial of his motion that the juror be replaced with an alternate. We affirmed without opinion. *State v. Monahan*, 203 Or App 808, 129 P3d 803, *rev den*, 340 Or 308 (2006).

■■ Petitioner then filed this petition for post-conviction relief, alleging that he had been denied effective assistance of counsel in contravention of his rights under Article I, section 11, of the Oregon Constitution and the Sixth and Fourteenth Amendments to the United States Constitution. In a post-conviction proceeding, a petitioner is entitled to relief on a claim for ineffective assistance of *trial* counsel pursuant to Article I, section 11, of the Oregon Constitution, only if the petitioner shows by the preponderance of the evidence that (1) criminal trial counsel failed to exercise reasonable professional skill and judgment, and (2) petitioner suffered prejudice as a result of that failure.[1] *Cunningham v. Thompson*, 186 Or App 221, 225, 62 P3d 823, *modified and adh'd to on recons*, 188 Or App 289, 71 P3d 110 (2003), *rev den*, 337 Or 327 (2004); *see also Strickland v. Washington*, 466 US 668, 688, 694, 104 S Ct 2052, 80 L Ed 2d 674 (1984) (providing similar standard under the Sixth and Fourteenth Amendments to the United States Constitution). For a claim for ineffective assistance of *appellate* counsel, a petitioner must

_____

[1] Article I, section 11, of the Oregon Constitution provides, in part, "In all criminal prosecutions, the accused shall have the right * * * to be heard by * * * counsel[.]"

show that competent appellate counsel would have raised that claimed error and that, if the claimed error had been raised, "it is more probable than not that the result would have been different." *Guinn v. Cupp*, 304 Or 488, 496, 747 P2d 984 (1987); *see also Smith v. Robbins*, 528 US 259, 285, 120 S Ct 746, 145 L Ed 2d 756 (2000) (stating similar standard under the federal constitution).

Specifically, petitioner alleged that his trial counsel was inadequate for failing to move for a mistrial where a juror knew Harding and that his appellate counsel was inadequate for failing to appeal the trial court's denial of his motion to exclude the juror and seat an alternate. The post-conviction court denied the petition, finding that the trial court had determined that "there was no reason to believe that the juror would be biased." Petitioner renews his arguments on appeal. On review, we conclude that petitioner did not demonstrate prejudice, and we affirm on that basis without reaching the issue of inadequate representation.

We turn first to petitioner's assignment of error relating to his trial counsel's failure to move for mistrial. In order to prove that any failure of trial counsel caused prejudice of a constitutional magnitude under Article I, section 11, a petitioner must show that counsel's advice, acts, or omissions had "a tendency to affect the result of the prosecution." *Stevens v. State of Oregon*, 322 Or 101, 110, 902 P2d 1137 (1995) (emphasis and internal quotation marks omitted). "Whether a petitioner has demonstrated prejudice is a question of law that, in turn, may depend on the post-conviction court's findings of fact." *Wyatt v. Czerniak*, 223 Or App 307, 311, 195 P3d 912 (2008). We are bound by the post-conviction court's factual findings if they are supported by evidence in the record. *Id.*

Accordingly, we consider whether trial counsel's failure to move for a mistrial had a tendency to affect the result of the prosecution. "In ruling on a motion for a mistrial, a trial court must decide whether to grant the motion, to cure the effect of inappropriate conduct or testimony by giving a proper instruction instead, or to do nothing at all." *State v.*

*Evans*, 211 Or App 162, 166, 154 P3d 166 (2007), *aff'd*, 344 Or 358, 182 P3d 175 (2008). Thus, petitioner could show prejudice if, had trial counsel moved for a mistrial, that motion would have had a tendency to cause the court to either grant the motion or to give a curative instruction that would have had a tendency to affect the prosecution in the underlying criminal case.

■■ Here, the post-conviction court found that the trial court determined "that there was no reason to believe that the juror would be biased."[2] That finding is supported by the evidence that the trial court had denied defendant's request to replace the juror with an alternate. As noted, the juror's statement, at most, indicated a bias against Harding, who was not called as a witness. Where the trial court had no reason to believe that the juror was biased against defendant, the trial court had no reason to have issued a curative instruction or grant a mistrial. Thus, petitioner did not demonstrate that he was prejudiced by his trial counsel's failure to move for a mistrial. For that reason, the post-conviction court did not err in concluding that petitioner was not denied adequate trial counsel in contravention of his rights under Article I, section 11.

■■ Similarly, under the Sixth and Fourteenth Amendments to the United States Constitution,[3] a petitioner seeking post-conviction relief must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694. For the same reasons that we conclude that the post-conviction court did not err in denying petitioner's claim regarding his trial counsel

---

[2] "The question whether a juror is biased is one of fact, to be determined by the trial court from all the circumstances, including the challenged juror's demeanor, apparent intelligence, and candor." *State v. Barone*, 328 Or 68, 74, 969 P2d 1013 (1998), *cert den*, 528 US 1135 (2000).

[3] The Sixth Amendment to the United States Constitution provides, in part, that "in all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defence." The Fourteenth Amendment to the United States Constitution provides, in part, "No State shall * * * deprive any person of life, liberty, or property, without due process of law[.]"

under the state constitution, we also conclude that the post-conviction court did not err in denying petitioner's claim under the federal constitution.

 We next address petitioner's assignment of error relating to his appellate counsel's failure to assign error to the trial court's denial of petitioner's motion to replace the juror with an alternate juror. Under Article I, section 11, of the Oregon Constitution, petitioner must show that, had the claimed error been raised, "it is more probable than not that the result would have been different." *Guinn*, 304 Or at 496. Similarly, under the Sixth and Fourteenth Amendments to the United States Constitution, petitioner must show a "reasonable probability" that the petitioner "would have prevailed on appeal" but for any unreasonable failure by appellate counsel to raise an error. *Smith*, 528 US at 285.

Accordingly, it was petitioner's burden before the post-conviction court to establish that there was a reasonable probability that petitioner would have prevailed on direct appeal had appellate counsel assigned error to the trial court's denial of petitioner's motion to replace the juror with an alternate. After a trial commences, a trial court must dismiss a juror only if the "juror dies or is unable to perform the duty because of illness or other cause which the court *deems sufficient.*" ORS 136.280 (emphasis added); *see* ORS 136.240 (allowing a court to permit a challenge for good cause shown "before the jury is completed and sworn"). Thus, petitioner's burden at the post-conviction court was to show that it is at least reasonably probable that this court, or the Supreme Court, would have found that the trial court erroneously concluded that the juror was able to perform her duties by failing to "deem sufficient" petitioner's allegation of juror bias as cause for dismissal of the juror. Under that test, a trial court has discretion to "deem sufficient" such an allegation of juror bias.

 For context, we observe that the trial court has discretion to remove a juror for actual bias during *voir dire*. *State v. Montez*, 309 Or 564, 574-75, 789 P2d 1352 (1990). To determine whether a juror should be excused before trial, "the test is whether the prospective juror's ideas or opinions would impair substantially his or her performance of the

duties of a juror to decide the case fairly and impartially on the evidence presented in court." *State v. Barone*, 328 Or 68, 74, 969 P2d 1013 (1998), *cert den*, 528 US 1135 (2000); *see also* ORCP 57 D(1)(g) (defining "actual bias" and applied to the criminal code by ORS 136.210(1)). We conclude that the standard for removing a juror *after* trial commences is at least as stringent as the standard for removal *before* trial. Accordingly, we examine whether the trial court would have abused its discretion in denying a motion to replace the juror due to a substantial impairment of the juror to decide the case fairly and impartially.

Here, the juror told the court clerk that she knew Harding "only too well" and that knowledge was "coloring [her] perception of things." However, the mere fact that a juror may have preconceived ideas does not mean, *per se*, that a juror cannot be fair and impartial. *State v. Evans*, 344 Or 358, 362, 182 P3d 175 (2008). Thus, although the juror's statement may indicate that the juror had formed an opinion as to Harding that was coloring her "perception of things," it does not, without further inquiry, implicate any bias against *petitioner*: petitioner does not argue that his appellate counsel was deficient for failing to raise the trial court's refusal to inquire further and the record does not show the type of bias that would require dismissal of the juror. Under those circumstances, the trial court did not abuse its discretion in allowing the juror to remain on the jury. Accordingly, there was not a reasonable probability that petitioner would have prevailed on direct appeal if appellate counsel had assigned error to the trial court's denial of petitioner's motion to dismiss the juror. The post-conviction court did not err.

In sum, the post-conviction court did not err in denying petitioner's claims for post-conviction relief on grounds that his trial or appellate counsel were constitutionally inadequate.

Affirmed.