Argued and submitted November 6, affirmed December 10, 2014, petition for review denied April 9, 2015 (357 Or 143)

MATTHEW REED CLARK,
*Petitioner-Appellant,*

*v.*

STATE OF OREGON,
*Defendant-Respondent.*

Multnomah County Circuit Court
100709988; A152469

340 P3d 757

Ryan O'Connor argued the cause and filed the brief for appellant.

Michael S. Shin argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Matthew J. Preusch, Assistant Attorney General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

GARRETT, J.

**GARRETT, J.**

In this post-conviction case, petitioner alleges that he received ineffective and inadequate assistance of counsel when his trial attorney made a statement on the record that contradicted petitioner's own representations to the court. The post-conviction court rejected petitioner's argument and denied the petition for relief. We affirm.

Petitioner was indicted on one count of third-degree rape and three counts of third-degree sexual abuse. Petitioner and his trial counsel signed a petition providing that petitioner would plead guilty to the third-degree rape charge and receive a downward departure prison sentence of 23 months in exchange for the district attorney's recommendation that the court dismiss the other three counts. Petitioner submitted the plea petition to the trial court.

The sentencing hearing occurred on a later date. At that hearing, petitioner told the trial court that he wanted to withdraw his plea. This appeal concerns the discussion that ensued, as to which the facts are undisputed. We rely on the extensive written findings made by the post-conviction court:

"At sentencing, [petitioner] requested the judge setover sentencing so he could hire a new attorney to prepare a request to withdraw his guilty plea. He told the court he didn't understand what was going on and didn't have an attorney, and indicated he felt rushed. Judge Bergstrom noted they 'talked about it a lot' as he had participated in several settlement conferences regarding the case. At that point, [petitioner's] mother, Connie Garcia, chimed in 'Because of your disability.' The following exchange then took place:

"'The Court:   You knew that you were going to get 23 months. You knew that your exposure was much, much higher than that. You knew the case against you is a slam dunk. To think you could go to trial and lose and get much, much more time.

"'[Petitioner]:   I didn't know that, Your Honor.

"'The Court:   How didn't you know it? You and I talked about it.

"'[Petitioner]: Well, I was trying to talk to [trial counsel] about it, and the case was rescheduled, and then all of a sudden it was put back, appointed, and I wasn't explained what I was going to sign, and I didn't have anybody that I felt . . .'

"His mother also apparently walked in front of the bar and [trial counsel] told her she needed to be behind it. [Trial counsel] reiterated to the judge her version of the events of the day the plea took place. [The prosecutor] also reiterated the history of the case and settlement conferences.

"After that, [petitioner] stated, 'I felt rushed into taking this plea. * * * I didn't have anybody to talk to me, to tell me what was actually going on. * * * When I came in here, I wasn't even explained what was going on. It was just, sign it.' [Trial counsel] then stated, 'That's not true.' [Petitioner] also told the judge he had documentation of the diagnosis of his 'disability of understanding,' and that an attorney had agreed to represent him.

"[Petitioner's] mother, * * * had spoken to attorney Alexander Hamalian after [petitioner's] plea. Mr. Hamalian agreed to represent [petitioner] and file a motion to withdraw his plea if [petitioner] could secure a setover as Mr. Hamalian was out of town and unavailable to appear at that court proceeding. Mr. Hamalian sent a fax confirming this scenario."

The trial court denied petitioner's requests to withdraw his guilty plea and set over sentencing. Petitioner was sentenced consistently with the terms of the plea petition.

Petitioner brought this action for post-conviction relief, alleging numerous deficiencies in his trial attorney's representation of him, including that his trial attorney (1) "failed to request to withdraw at sentencing or request a continuance on petitioner's behalf" when petitioner indicated to the Court that he did not understand the plea and did not have an attorney to answer his questions; (2) "failed to object to the [t]rial [c]ourt[']s failure to set over sentencing for retained counsel to appear and move to withdraw the plea"; (3) and "violated her ethical and statutory duties when she contradicted petitioner on the record concerning his understanding of the plea proceeding."

The post-conviction court denied the petition in its entirety. As to the claims relevant on appeal, the court entered the following findings and conclusions:

"[Petitioner's] disability involved borderline intelligence functioning with an IQ of around 77. [Trial counsel] was aware of his disability. It is her practice to communicate in a manner that is understandable for the individual, and in the case of developmental disabilities would take special steps to change her language and style of speaking, to repeat back information regularly, and to take more time to ask and answer questions. Judge Bergstrom was also aware of the disability and communicated with [petitioner] in a similar fashion. * * * [Trial counsel] participated in a judicial settlement conference with Judge Bergstrom and her client and was aware he'd had two earlier judicial settlement conferences * * *, and she was confident her client developed a full understanding of the issues. She also had a psycho-sexual evaluation * * *, which included the doctor's observation that [petitioner] appeared to understand his legal situation and possible consequences. Judge Bergstrom, who was familiar with defendant from the multiple settlement conferences, made a finding that the plea was made freely, voluntarily and intelligently. There is no evidence that [petitioner's] disability interfered with his ability to make a knowing and voluntary decision other than his statement at the time of sentencing.

"* * * [Trial counsel] had good reason to believe [petitioner] was being manipulated by his mother and that he was not speaking for himself at the time of his request. Not only was [petitioner's] mother both vocally and physically intrusive at the hearing, [trial counsel] testified that she was disruptive during conferences with [petitioner]. [Trial counsel] testified in the post-conviction trial that Ms. Garcia would not let him make decisions for himself and she would get irate and disruptive and mad at him that he wanted to enter a plea. She said, 'He was more sure of himself and decisive in conversations without her. He was afraid to speak up for himself if she was here.'

"She also testified about the plea that 'It was clear it's what he wanted to do' despite his mother's objection. * * * [Petitioner] told [trial counsel] his mother would be mad about the plea but he was 'doing what's right for me.'

"* * * In not asking the court for a continuance, [trial counsel] was, in fact, protecting her client's interests based on what she understood them to be from the totality of their discussions.

"[Trial counsel] did not need to withdraw due to [petitioner's] mention of another attorney as she did not have confirmation another attorney had actually been hired. * * * Nothing in the Oregon Rules of Professional Conduct or the U.S. or Oregon Constitutions would require her to withdraw because her client was seeking a setover and indicated another attorney would represent him at a subsequent hearing if he were to get a setover. Instead, she would be violating her ethical duty in doing so because she would be leaving her client totally unrepresented in violation of ORPC 1.16(b)(1).

"* * * * *

"Once [petitioner] said he didn't understand the plea proceeding, it would have been better to put the brakes on the sentencing hearing and to not state her client's statement was not true. However, she was in an untenable position. [Petitioner] had affirmed his position to her of what he wanted to do despite his mother's interference, but was unable to vocalize that position in the face of domineering statements and disruptions when his mother was present. [Trial counsel] was confident her client's decision to plea was the choice that was uncoerced and that it was made knowingly, voluntarily and intelligently. In representing clients with diminished capacity, a lawyer must as far as reasonably possible maintain a normal client-lawyer relationship with the client, and may take reasonably necessary protective action to protect the client when the client cannot adequately act in his own interest. ORPC Rule 1.14. * * *

"Even if she were to request a setover, petitioner has not established that the continuance or her withdrawal would tend to change the outcome of the case. Judge Bergstrom was presented with the setover request, considered it and denied it. While it's possible he might have been more likely to grant the motion for setover when made by an attorney, there's no indication in the record the judge would have considered differently. He was relying, among other factors on his own observations during three settlement conferences. He confronted [petitioner] with the content of their conversations and [petitioner] provided a non-credible response

about why it was he didn't understand what the judge told him during conferences."

On appeal, petitioner argues that the post-conviction court should have granted him relief on the alleged grounds that his trial counsel was inadequate in failing to request to withdraw, failing to request a continuance or to object to the trial court's refusal to set over sentencing, and in contradicting petitioner on the record.

To prevail on a claim for post-conviction relief, a petitioner must demonstrate a substantial violation of his state or federal constitutional rights. ORS 138.530(1)(a). Article I, section 11, of the Oregon Constitution guarantees every criminal defendant the right to adequate assistance of counsel. *Krummacher v. Gierloff*, 290 Or 867, 871-72, 627 P2d 458 (1981). Similarly, the Sixth and Fourteenth Amendments to the United States Constitution guarantee defendants the effective assistance of counsel. *Strickland v. Washington*, 466 US 668, 687, 104 S Ct 2052, 80 L Ed 2d 674 (1984); *Herring v. New York*, 422 US 853, 856-57, 95 S Ct 2550, 45 L Ed 2d 593 (1975). The standards under the state and federal constitutions are "functionally equivalent." *Montez v. Czerniak*, 237 Or App 276, 278 n 1, 239 P3d 1023 (2010). To make out a claim of inadequate or ineffective assistance of counsel, a petitioner must show by a preponderance of the evidence that (1) counsel failed to exercise reasonable professional skill and judgment, and (2) petitioner was prejudiced as a result. *Monahan v. Belleque*, 234 Or App 93, 97, 227 P3d 777, *rev den*, 348 Or 669 (2010).

We review post-conviction proceedings for legal error. *Chew v. State of Oregon*, 121 Or App 474, 476, 855 P2d 1120, *rev den*, 318 Or 24 (1993). We are bound by the post-conviction court's findings of fact if there is evidence in the record to support them. *Brock v. Wright*, 98 Or App 323, 326, 778 P2d 999 (1989). We make our own determination, however, of the constitutional issue whether petitioner was deprived of effective and adequate counsel. *Loveless v. Maass*, 166 Or App 611, 615, 999 P2d 537 (2000).

As noted above, a claim of ineffective assistance of counsel typically requires the petitioner to prove prejudice. In this case, petitioner invokes a narrow exception to that

rule that has been recognized in some cases involving a conflict of interest. *See, e.g., Cuyler v. Sullivan*, 446 US 335, 348-49, 100 S Ct 1708, 64 L Ed 2d 333 (1980); *United States v. Ellison*, 798 F2d 1102, 1107 (7th Cir 1986). Petitioner argues that his trial counsel had an actual conflict of interest because, when petitioner told the trial court that the attorney had inadequately advised him and pressured him into accepting a plea, the attorney had to choose between representing petitioner's interests and representing her own interests by defending her conduct to the court (thus disagreeing with petitioner's account). Relying on *Sullivan*, petitioner contends that the actual conflict rendered counsel's assistance inadequate and ineffective and that a separate showing of prejudice need not be made.

In response, the state argues that petitioner's trial counsel did not have a conflict of interest and, in fact, was working to further petitioner's interests when she made her remarks to the trial court. The state also argues that, even if petitioner's trial attorney was inadequate, petitioner was required to prove prejudice and failed to do so. The state contends that the exception in *Sullivan* is narrower than petitioner interprets it to be and does not apply to the facts of this case.[1]

We need not resolve whether the *Sullivan* exception to the prejudice requirement applies to this circumstance, because we agree with the state that petitioner has failed to prove any inadequacy of counsel. The fundamental premise of petitioner's argument—that his trial counsel had an actual conflict of interest under Oregon Rule of Professional Conduct 1.7(a)(2)—is incorrect. That rule provides that an actual conflict of interest exists if there is "a significant risk that the representation of one or more clients will be materially limited by * * * a personal interest of the lawyer." Petitioner theorizes that his trial counsel had a personal interest—preservation of her reputation—that came into

---

[1] The parties' dispute over the applicability of *Sullivan* has to do with the nature of the conflict of interest. The state argues that the exception to the prejudice requirement has been applied only to cases involving an attorney's representation of multiple defendants. Petitioner contends that it has broader application to other forms of conflict of interest. We express no view on the breadth of the exception because, as we explain, there was no conflict of interest in this case.

conflict with petitioner's interests when petitioner told the trial court that his counsel had inadequately advised him. But that characterization of trial counsel's motivation and conduct is not compelled by the record. Relying in part on the testimony of petitioner's trial counsel, the post-conviction court found that, when trial counsel spoke up to contradict what petitioner had told the trial court, she was acting not to protect herself, but to advocate for what she believed to be petitioner's actual wishes in the face of "domineering statements and disruptions" from petitioner's mother, who did not want petitioner to plead guilty. We readily conclude that that finding is supported by evidence in the record. *Brock*, 98 Or App at 326. Accordingly, the post-conviction court did not err in rejecting petitioner's argument that his trial counsel had a conflict of interest and should have sought to withdraw.

Although petitioner separately asserts that his trial counsel was inadequate in failing to request a continuance or to object to the trial court's refusal to set over the sentencing hearing, petitioner makes no argument in support of those contentions other than his conflict-of-interest theory, which we reject. In any event, the record amply supports the post-conviction court's conclusion that, even if trial counsel had sought a postponement, there is no indication that the trial judge would have granted it. Rather, the record indicates that the trial judge was fully acquainted with the circumstances leading up to the sentencing hearing, had personally observed and interacted with petitioner in settlement conferences, and doubted the veracity of petitioner's stated reasons for wanting a continuance. Because there is no basis for inferring that the trial court would have granted a continuance if petitioner's trial counsel had requested one, petitioner has failed to establish prejudice.

For the foregoing reasons, we affirm the judgment of the post-conviction court.

Affirmed.