No. 343 May 30, 2024 713

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ZACHARY RYAN ORVIS,
*Defendant-Appellant.*

Douglas County Circuit Court
21CR19974; A179099

Thomas M. Hull, Judge.

Submitted April 30, 2024.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Meredith Allen, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jon Zunkel-deCoursey, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

Defendant appeals his judgment of conviction for various sex offenses involving a five-year-old victim, arguing in his sole assignment of error that the trial court erred in denying his motion for a mistrial. The question presented is whether a court abuses its discretion when it denies a mistrial motion after potential jurors voice opinions during jury selection that young children generally tell the truth. Defendant argues that such statements vouched for the credibility of child victims, presenting a serious risk that other members of the jury would be unduly influenced by those statements in a case that turned on the credibility of a child. We conclude that the trial court's denial of mistrial under the circumstances presented here was within its allowable discretion. Accordingly, we affirm.

## FACTS

The facts relevant on appeal are procedural. Defendant went to trial on allegations that he had sexually abused a young child, who at the time of trial was five years old and was expected to testify. During jury selection, the prosecutor asked the panel questions such as:

- "[D]o you think kids are *** likely to be more or less truthful than adults?"

- "[W]ould you agree *** that kids process things differently and remember things differently than adults do?"

- In light of a jury instruction that "any witness that you believe" is sufficient to prove a fact, "what if that witness is a kid?"

Those questions elicited a variety of opinions from the jurors. One juror said that children "could be coached to be less truthful." Another said, "[I]t really depends on the child," and "I think that some children tend to tell more tales." One of the jurors opined that children tend to remember less details and focus instead on the "emotional part" of what happens to them, but that juror "believe[d] that every child wants to tell their truth. *** What they believe happened to them. And not that they're wrong or right but, but it's their truth." One of the jurors offered when pressed that they would "still listen to what they have to say." Another

juror said, "[Y]ou have to hear both sides. If they raise their right hand and say they're gonna tell the truth then I would take it for that until they prove me wrong."

One juror stood out from the others because of his longer discussion of the issue and his familial connection to child-abuse prosecutions. He explained, among other things, that his mother had worked for the Department of Human Services (DHS) for "many, many years" and, based on his knowledge of the system, he knew that it was "hard to prosecute with [a] kid" because "the truth can get distorted a lot." Believing a 12-year-old would be easier than a four-year-old because "it's more accurate." So "the age does matter a lot." When the prosecutor asked him if he could believe a "five year old victim [*sic*]," he replied that "[i]t would be hard" because, based on personal experience, "sometimes the truth kind of gets distorted when * * * they're young."

The prosecutor asked the other panel members if anyone disagreed with that sentiment. One juror responded,

"I disagree because with kids in a situation like this they may not know and * * * they may not be able to verbalize it[,] but they certainly know what happened to them. I think a lot of times children tell the truth more than adults do because they're so innocent."

At that point, the trial court sent the panel out of the room and raised concerns with the parties about the panel member whose mother worked for DHS. The court was concerned that he had sounded like "something of an expert" and he was telling everyone that the state's "witness is going to lie." As a result, the court was concerned that the prosecution's case was potentially "tainted" by the juror's "damning" statements, which had suggested that "[y]ou can't get the truth out of a three, four, or five [year old]."

The prosecutor did not share the same level of concern, explaining, "[W]e're still *voir diring*. At * * * this juncture * * * the lawyers are assessing these different responses that folks are making and deciding preemptory challenge[s]."

Unsurprisingly, defendant's concern was not with the statements by the panel member whose mother worked for DHS. Rather, he was concerned with the follow-up

statement made by the other juror who had said that "a lot of times children tell the truth more than adults do because they're so innocent." Defendant explained that that comment was "very concerning" because "essentially the juror *** [was] trying to convince everybody that kids never lie." For that reason, defendant moved for a mistrial "based on the credibility issues and how important the vouching issue is and how essentially we have an argument about whether a child the same age as the victim in this case is gonna be telling the truth. And that argument in the jury pool, I think, is essentially tainting the jury pool."

The court denied the motion. Although the explanation for its ruling is not completely clear, it seems that the court concluded that statements by prospective jurors did not amount to prohibited "vouching" and that the jury would be instructed to decide the case only on the evidence received in court.

## ANALYSIS

Relying on Article I, section 11, of the Oregon Constitution[1] and the Due Process Clause of the Fourteenth Amendment to the United States Constitution,[2] defendant argues that the court erred in denying his motion for mistrial because the panel was tainted by "claims that five-year-olds are truth-tellers." Furthermore, he stresses the point that those claims were in response to the prosecutor's questions about the credibility of child "victims" and that those questions were designed to elicit such responses. He argues that, in a case that turned on the credibility of a five-year-old witness, the panel members' comments were "vouching" opinions that undermined the presumption of innocence and compromised his right to a fair trial.

We review the denial of defendant's mistrial motion for abuse of discretion. *State v. Cox*, 272 Or App 390, 409, 359 P3d 257 (2015) (noting that "[a] trial court abuses its

---

[1] Article I, section 11, provides, in part: "In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed ***."

[2] Section 1 of the Fourteenth Amendment provides, in part: "No State shall *** deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

discretion in denying a motion for a mistrial if the effect is to deny the defendant a fair trial").

We begin our analysis with *State v. Evans*, 344 Or 358, 182 P3d 175 (2008). There, the defendant moved for a mistrial after a prospective juror said, during jury selection, that she knew the defendant because they "used to be friends and that she had an 'outstanding stalking order' against him." *Id.* at 360. The trial court excused that juror for cause, but it denied the mistrial motion. *Id.* After we affirmed that decision,[3] the defendant appealed to the Supreme Court, which considered whether the prospective juror's statement "so tainted the remaining prospective jurors as to deprive defendant of his right to an impartial jury." *Id.*

The court explained that the right to in impartial jury safeguards the right to a jury that is "not biased in favor of or against either party and that will base its decision on the evidence produced at trial and legal standards provided by the trial court." *Id.* at 362 (quotation marks omitted). The court noted that the defendant's claim was not premised upon the "*actual* bias" of any particular juror (because the defendant was not challenging the denial of a motion to excuse a juror for cause); rather, it was a "claim of *assumed* bias." *Id.* at 363 (emphases in original). In other words, the issue reduced to whether "the excused prospective juror's reference to the stalking order was so inherently prejudicial that the remaining jurors, because they heard it, must be assumed to have been unable to disregard what they heard and to try the case based only on the evidence that would later be adduced at trial." *Id.* at 363. The court ultimately concluded that the comment was not "so inherently prejudicial as to deprive defendant of his right to an impartial jury." *Id.* at 367. In doing so, it made several important observations.

It emphasized that jury selection is "not an evidentiary phase of trial"—it is a "quest" to discover "jurors who will conscientiously apply the law and find the facts." *Id.* at 365 (quoting *State v. Nefstad*, 309 Or 523, 534 n 6, 789 P2d 1326 (1990)). To that end, "[i]nquiring into the prospective

---

[3] *State v. Evans*, 211 Or App 162, 170, 154 P3d 166 (2007), *aff'd*, 344 Or 358 (2008).

jurors' potential interest or bias in a case is a legitimate way of selecting fair-minded individuals to serve on the jury." *Id.* That means that jury selection necessarily "entails an inherent risk that the panel of prospective jurors will be exposed to information revealed by individual prospective jurors who are excused from the panel for cause." *Id.* For example, the statement at issue in that case—noting the existence of a stalking order against the defendant—was made as "a candid response to a vital question" (specifically, whether any of the prospective jurors knew the defendant), which was "designed to uncover potential juror bias." *Id.* at 367.

Those observations are key to the resolution of this case. Here, as in *Evans*, defendant is not challenging the denial of a for-cause challenge to a particular juror. He is arguing that various comments so tainted the prospective jury pool that we must assume as a matter of law that the other prospective jurors would have been unable to disregard what they heard or to try the case based only on the evidence that would later be adduced at trial. We are not convinced that any statement made by any of the prospective jurors was so prejudicial.

Moreover, as *Evans* suggests, the responses elicited during the jury selection were exactly the types of responses that jury selection is designed to elicit. In a case that turned largely on the credibility of a child witness, it was vital to determine whether prospective jurors held a bias regarding the credibility of child witnesses based on their age alone. That is, both parties needed to know whether prospective jurors would never believe a child on account of their age or vice versa. Discovering such information is the very purpose of jury selection and is necessary to allow the parties to raise for-cause challenges to prospective jurors or to exercise their peremptory challenges. Although the quest for such information carries the inherent risk that a prospective juror will voice opinions or information that one or both parties find to be prejudicial, opting for a rule of law that too tightly governs what can be said by prospective jurors would chill the parties' ability to seek the information they need from the jury-selection process. Although we are not

holding that comments by a prospective juror during jury selection can never require a mistrial, we do conclude that the trial court was well within its discretion to deny the mistrial motion here.

Affirmed.